# Exhibit (E)

# MNB Meridian Law, Ltd.
### Attorneys and Counsellors-at-Law

Philadelphia, PA • Washington, D.C. • Alexandria, VA

One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

Main: (215) 268-3003 • Facsimile: (267) 392-2024 • Internet: www.mnbmeridianlaw.com

Christopher Nuneviller ^
M. Charlotte Mahoney +

Partners

+ Admitted in North Carolina
^ Admitted in Pennsylvania
* Admitted in Virginia
# Admitted in the District of Columbia
† Admitted in Georgia
※ Admitted in Arkansas
⁂ Admitted in Michigan

Martha Foss †※
Jennifer Wagner^#
Derek (Dirk) Maurer *
John DeJak ⁂
Dara Paleski #^

Of Counsel

Reply to:
Christopher Nuneviller
Direct: (215) 367-3761
Email: cnuneviller@mnbmeridian.com

May 21, 2025

Dean Julie Byerley, M.D. M.P.H.
President, Geisinger Commonwealth School of Medicine
525 Pine Street
Scranton, Pennsylvania 18509

Re:   Appeal of the Recommendation of Dismissal for Khalid HOSSAIN

Dear Dr. Byerley:

     Khalid Hossain has asked this firm to assist him with his appeal of the recommendation of dismissal made by the Committee on Academic and Professional Standards ("CAPS") on May 8, 2025. On his behalf, by this letter, and pursuant to the enclosed CAPS Decision Appeal Form, Khalid respectfully requests you overturn the CAPS recommendation and allow Khalid to receive his degree. This appeal is submitted pursuant to the (undated) Policy on Academic and Professional Standards on the grounds that (1) procedures set forth in Geisinger Commonwealth School of Medicine ("GCSOM") policies, as discussed below, were not followed; (2) sanctions imposed were excessively harsh for the violation; and, (3) new and relevant information, not available at the time of the hearing, has arisen.

     But for Khalid's failure to take the United States Medical Licensing Examination ("USMLE") Step 2 Examination on or before April 19, 2025 (or more correctly that "he did not notify anyone that he did not sit on 4/19") – which he took on April 30th and **_passed_** (with a score of 233) **_he has met all requirements for graduation_**. (*see* Enclosure (4))  These requirements include the successful completion of his professional development plan, and most importantly, the fact the maximum time for Khalid to complete his degree was seven years (no later than 2026) (*see* Enclosure (1)).  For these reasons, the CAPS dismissal recommendation should be rejected, and Khalid should be awarded his medical degree.

MNB Meridian Law, Ltd.

For reasons set forth below and to put his conduct in context, Khalid's decision to postpone his USMLE Step 2 exam did not impact his education, his mandatory 2026 graduation date, or any other medically substantive, ethical, or conduct related matter that would affect his ability to treat patients safely and ethically. The only person or organization affected by his decision on April 18th was Khalid. His last minute late night decision (aggravated by his mental health issues) to postpone the April 19th exam to avoid an even more grave issue – failure of the USMLE Step 2 exam, was life-altering. He informed his supervisors of the decision as soon as he had a plan to mitigate his decision, and he executed that plan successfully. That decision afforded him a successful result and passing score of 233. He should be commended for that decision and not dismissed days before graduation for failing to communicate over the weekend.

There are several issues of concern that should be considered in your review and ultimate decision to reject the CAPS dismissal recommendation. These concerns are relevant to the fact that policies were not followed, that dismissing Khalid was excessively harsh given the totality of his performance across *all aspects* of his education, and that information that was clearly available to CAPS, *e.g.,* his disability diagnoses and accommodations, were not identified, reviewed, or considered by CAPS. He was only punished for his lapses and not commended for his more significant successes.

1. **Maximum Time for Degree Completion**. CAPS' reliance on a six-year requirement graduation requirement in its May and November 2024, and May 2025 referrals is incorrect ("*Because you began the MD curriculum in 2019, you must graduate with the MD Class of 2025*") (*see for instance*, Reference (k))  CAPS is correct insofar as Khalid matriculated in July 2019 with the Class of 2023. Pursuant to the GCSOM Policy on Academic Progress (Policy Number 310.1010.102, *dated* April 4, 2019) (which "*outlines the standards for SAP at GCSOM which apply to all matriculated MD students, whether or not they are recipients of financial aid*") "*the **maximum time** frame permitted **for completion** of the MD degree **is seven years** and the maximum time frame permitted to receive federal financial aid is six years including any approved leave of absence,*" making Khalid's required graduation date no later than 2026.[1] (*see* Enclosure (1)).  (emphasis added)

Specifically, the May 8, 2025 referral for failure to take the USMLE Step 2 exam and subsequent recommendation for dismissal, was predicated on the erroneous understanding Khalid had reached his maximum time for graduation in 2025:

> "*At his most recent meeting of November 20,2024, Khalid was instructed to sit for the USMLE exam prior to the deadline set forth to ensure graduation compliance. Khalid was scheduled to re sit for USMLE Step 2 Examination on 4/19/2025 and rescheduled the exam for 4/30/2025. He did not notify anyone that he did not sit on 4/19. Khalid has requested to extend sitting for this exam beyond 4/30. Per the GCSOM Policy on Satisfactory*

---

[1] *see also* the superseded GCSOM Policy on Academic Progress for the MD Degree (Financial Aid) (Policy Number 310.1010.102, *dated* October 30, 2017 ("*The maximum time frame permitted for completion of the MD degree is seven years including any approved leave of absence*."); and, Student - Policy on the Standards and Procedures for the Graduation of MD Student ("*Candidacy for the MD degree may not extend longer than seven years from the date of first entry into the program including any approved leave of absences*.") (Policy No.: 100.1065.113, *dated* October 30, 2017) (each included in Enclosure (1)).

MNB Meridian Law, Ltd.

*Academic Progress Khalid must complete the MD curriculum within 6 years including leaves of absence. Because he began the MD curriculum in 2019, Khalid must graduate with the MD Class of 2025.*" (*see* Reference (g))

Therefore, holding Khalid to the 6-year degree completion requirement is a violation of GCSOM policy (*see* Enclosure (1)).[2] Given he has completed all requirements for graduation, Khalid should be immediately reinstated and his degree conferred.

    2. **Failure to Identify, Address, and Mitigate Preexisting Information**. The CAPS decision letter of May 8, 2025, provides a recitation of Khalid's five prior referrals to CAPS. They were related to:

    (a) (June 2022) failing to sit for the USMLE Step 1 exam (for which he was granted an extension, ultimately passing the exam).

    (b) (February 2023) professionalism concerns related to an incident where a professor appears to have accused Khalid of lying about his presence at a rotation and a later "cover up" (for which Khalid provided a rational explanation and evidence of his actions and intent) and for which he was placed on professional development plan. A "sanction" that was to remain in place until *completion*. He successfully completed his professional development plan in March 2025. (*see* Reference (h))

    (c) (May 2024) for professionalism concerns related to a lack of communication (due to a GCSOM IT issue reinstating Khalid's email access returning from pursuing his Masters degree) in planning his return to full-time medical student status, and failing to sit for the USMLE Step 2 exam (for which he was granted an extension and an NLT date, and which he passed on April 30, 2025 with a score of 233).

    (d) (August 2024) for failing to adhere to the professional development plan (e.g., the timely scheduling of "reflection" discussions), and again failing to sit for the USMLE Step 2 exam (for which he was granted another extension, later passing). We note that in this specific referral, CAPS was particularly harsh in condemning Khalid for failing to adhere to his professional development plan when members noted Khalid's stress levels, anxiety levels, difficulty clinical rotations and clinical hours, but did not recommend or provide Khalid with the support he required and was the purpose, mission and goal of CAPS – to ensure the success of GCSOM students.

    (e) (November 2024) for failing to adhere to the professional development plan and failing his first USMLE Step 2 exam attempt (with a score of 196).

    We also note as a procedural matter, the May 2025 referral to CAPS, and their recommendation was based on a "most [undefined] recent referral." Further, and but for a recitation of the prior five referrals, the reason for his referral was not specifically mentioned in

---

[2] There does not appear to be an acknowledged notice given to Khalid, or the GCSOM student body as a whole in the Student Handbook (2024-2025) (or for any academic year), or the June 2024 Student Bulletin, as to the change in the mandatory degree completion date for, at a minimum, the Class of 2023, the class in which Khalid matriculated.

MNB MERIDIAN LAW, LTD.

the decision letter, *e.g.*, you failed to take and pass the USMLE Step 2 exam by the previously established (institutional) deadline. The CAPS decision appears to be generally based on the Committee's review of the totality of the records they believed were relevant to Khalid's referral, including the Academic, Professional and Technical Standards that govern the MD program, and he should be dismissed.

A "totality of the records" appears to include the professional development plan that Khalid successfully completed in March 2025, but yet was held doubly accountable in a single lapse that was ultimately based on CAPS' mistake of fact as to his 2026 mandatory graduation date.

CAPS provides only "dismissal from the MD program for failing to communicate effectively with faculty, support staff, and others," and for "ethics and professionalism" standards for not completing the (incorrectly established) responsibilities attendant to the curriculum and GCSOM policies. There is no discussion as to Khalid's prior performance, successes and failures, the completion of his professional development plan two months prior, and most importantly given the types of matters for which he was referred to CAPS, or the academic accommodations provided to Khalid for most of his attendance at GCSOM.

As CAPS knew or should have known, Khalid has had academic accommodations in place since January 2023 –prior to four of his CAPS referrals. (*see* Reference (i)) As early as 2021, Khalid was diagnosed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Enclosure (2)) His noted failures, specifically in February 2023 for failing to adhere to deadlines and being confronted about his integrity, were all directly related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Khalid was open about his conditions and the effects they had on him coping with matters unrelated to his academics. For example, in April 2023, Khalid mentioned to CAPS "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*see* Reference (j)) While he does not specifically discuss his disabilities, they are clearly evident in explaining his reasons for his failures in communicating his return to his medical education, *e.g.*, losing track of important deadlines and communicating with GCSOM staff regarding his return while "*working on my grant proposal, thesis, handling clinic duties, managing ongoing research projects, completing numerous papers, traveling for conferences, and preparing for finals.*" (*see* Reference (j)) In this instance, CAPS specifically sanctioned Khalid despite his explanation of his mental health struggles (and for which he had an accommodation) for failing to "meet the technical standards for: (1) communication skills, specifically, a failure to effectively and sensitively communicate information to faculty, colleagues, members of the health care team, and support staff; (2) behavior, health, and social attributes, specifically a failure to exercise good judgment. (*see* Reference (j)). Given CAPS' sanctions, out of a need to be perceived as a competent student and doctor, Khalid did not wear his disabilities on his sleeve, he worked through them to the best of his ability.

MNB Meridian Law, Ltd.

Despite a properly adjudicated accommodation request and his noted limitations, there is no discussion or acknowledgement by CAPS of how those disabilities may have impacted his decision making. Dismissing him from the program for matters that can be directly related to and are derivative of his disabilities, is an overly harsh and egregious punishment for "failures" unrelated to academic integrity, or patient care and safety.

3. <u>Egregiousness of the Punishment</u>. ***<u>Dismissal</u>*** from GCSOM ***<u>days prior to his graduation</u>*** for matters that are unrelated to the practice of medicine and for reasons that do not truly align with the American Medical Associations' Code of Ethics, ***<u>is an egregious decision</u>*** by any measure. Particularly, when the allegations of "misconduct" are related to the scheduling of exams, lack of communication and other school administrative matters (*e.g.*, failing to meet for "reflections") – all of which are failures that are personal to Khalid and who was the only victim of his failures, not patients or their care or safety.

The Policy on Academic and Professional Standards Governing the MD Program Class of 2025 (Policy Number 110.1006.105 (*dated* May 25, 2021) (the only one apparently available) states that a student can be dismissed "*for failure to meet the terms of probation or suspension or continued failure to meet the academic or professional requirements, or failure to meet technical standards with or without reasonable accommodations, or for any egregious violation of the above-mentioned requirements*." Khalid does not meet the letter, spirit or intent of the reasons intended for dismissal.

While Khalid was placed on probation for "professional concerns" – a single two-year probationary period from which he successfully graduated. He was never suspended for "*failure to meet the terms of academic warning and/or probation, for new failures to meet/maintain academic, professional or technical requirements, or for any egregious violation of the above-mentioned requirements*." He was never placed on administrative suspension due to "*allegations of personal misconduct or observed behavior that threatens the well-being of self or others*."

GCSOM defines professionalism as:

*A candidate must exercise the appropriate ethical and professional conduct and personal attributes that are critical to the practice of medicine, including the ability to:*

- *Understand, distinguish, and apply the legal, moral and ethical conduct and values of the practice of medicine and function within both the law and ethical standards of the medical profession*
- *Construct frames of Enclosure which delimit appropriate professional, ethical, and moral behavior and values*
- *Maintain appropriate **<u>professional relationships and boundaries with patients, family, staff, faculty, colleagues, the healthcare team, and others</u>***
- *Readily and willingly interact with all members of the healthcare team, faculty and staff, patients and families and care of any patient **<u>in a courteous, professional, and respectful manner,</u>** regardless of the patient's age, color, disability, national origin, race, religion, gender, sexual orientation, veteran status, or political beliefs*
- *Maintain patient confidentiality*

MNB Meridian Law, Ltd.

- *Advocate for patients*
- *Promptly **complete all responsibilities attendant to the curriculum** and GCSOM policies and procedures*
- *Abide by all state, federal, and local laws and GCSOM policies and procedures related to the use of alcohol and drugs*

(emphasis added as related to CAPS findings)

The GCSOM 2022-2023 Student Bulletin (Reference (b)) Academic and Professional Standards Governing the MD Program Class of 2025, defines communication skills as the ability to "*effectively and sensitively communicate information, including eliciting, conveying, clarifying, and acting on the information, and creating rapport by multiple modalities with (a) Patients and/or designated representatives of patients (including family members), and (b) faculty, colleagues, members of the health care team, support staff, and others with whom the candidate comes in contact.*"

Candidates must be able to demonstrate these skills through: (a) the use interpersonal skills to establish responsive, empathetic and respectful communication and rapport and therapeutic relationships with patients in a way that promotes openness on issues of concern and sensitivity, including potential cultural differences and the use of an interpreter; (b) record information accurately and clearly; and (c) recognize urgent situations in which timely supervision, assistance and consultation must be sought. The examples provided are numerous, but they do not relate to communicating with faculty, staff, and others about a student's progress through the curriculum.

Khalid does not discount and in practice encourages and demonstrates the need to communicate with his supervisors and others that support him in the pursuit of his medical degree. He benefited a lot from the work he did on his professional development plan – and he executed those reflections in his progress toward graduation.

By all accounts, Khalid was an excellent student. He is an intelligent young man. His supervisors noted that his medical knowledge was superior, his patient care was excellent, and his preparation for class and rotations was comparable to that of his classmates. In comments to his November 2024 evaluation as part of his Medical Student Performance Evaluation, his evaluator(s) noted (emphasis added):

> "*Functioned at the level of a resident*. Consistently following up on his patients. Always looked for opportunities to assist residents and worked very well on the team.
>
> Khalid was a great fourth year medical student who was *dependable and reliable*. He was professional in all his interactions with patients and was good at connecting and counseling patient's, notably with one patient who struggled with alcoholism and drug use disorder. Patients often told me how nice he was and that he explained things to them. Furthermore. he has an inquisitive mind and is eager to learn. He already has a *great base of medical knowledge* from which he will continue to build with his eagerness to learn. He was *always willing to help out the team* and was an effective team player.

> Dr. Hossain exhibits a _natural empathy and exceptional interpersonal skills_. I observed multiple times his interactions with patients and their families. His ability to address all their concerns and worries is impressive. On multiple occasions patients were asking me to talk to Dr. Hossain. I recall a particular case involving a patient suffering from significant respiratory failure caused by spreading malignancy and pneumonia. She expressed to me how grateful she was to have Dr. Hossain as part of her treatment team. She shared that he felt like an old friend - _compassionate, attentive, and always ready to offer thoughtful advice_ that she felt confident in following. Dr. Hossain is a great person to work with. He is always ready to help, very involved in care of his patients, always willing to contribute in meaningful ways to ensure the best outcomes for patients. His _medical knowledge base is impressive_. Dr. Hossain mentioned to me that he previously worked as an engineer and is eager to integrate that experience into his current role as a healthcare provider. His _knowledge of medical technology is extensive, and there is so much I can learn from him_. I have no doubt than Dr. Hossain will make significant contributions to the field of medicine in future.
>
> Khalid is an _exceptional student and clearly invested in internal medicine_. He could reliably see 3-4 patients and knew their comprehensive history and was _able to present his findings in an organized and structured manner_. He reassessed his patients multiple times during the day and formed a strong connection with them. He is engaged during rounds and asked smart questions. He functions well within the team and found ways to help out the residents.
>
> Able to take an effective history and accurate physical exam. Oral _presentations are thorough_. Able to develop a broad differential.
>
> Khalid stood out from day one for his positivity and communication skills. He has a genuine and contagious optimism that influenced the whole team for the better. His _inquisitive nature was clear based on his thoughtful and often nuanced questions_ about not only medical topics but also ethics and the care system at large. He arrived with _good foundational medical knowledge on par with his peers and was able to deliver organized, through and concise presentations culminating in solid assessments and plans_ that were on par with a strong intern. Where many students might have shied away from entering difficult conversations, Khalid readily _accepted the challenge of talking with complex, overwhelmed and sometimes frustrated patients and their family_. He treats all with exemplary kindness, respect, and patience."

(_see_ Reference (k))

In a separate evaluation by a clinical supervisor, the physician went out of his way to commend Khalid's performance:

> "_Khalid is an exceptionally smart, personable student. He is an excellent communicator and developed rapport quickly with patients and staff. He is polite, and caring, and avoids medical jargon. Good, respectful, demeanor and rapport with patients … Solid medical_

*student, mature and respectful of patients, team members and staff. Eager and prompt. Professional at all times. Joined in clinic many days and was interested in the complexities of the cases and with good thought processes to work thru the needs of diagnosis, treatment and follow up. One of our Faculty felt that Khalid is the best medical student he has encountered his 35 years of practice. He has a well-organized thought process and good medical knowledge to become a superb clinician.*"

(*see* Enclosure (3))

Furthermore, the areas noted for improvement were not administrative, but practical, *e.g.,* "be more confident, be more focused on "discerning what is clinically relevant," staying organized and "sifting through the extraneous details," and to "Include evidence and guidelines in the diagnostic and therapeutic plans." (*see* Reference (k))

None of the issues for which Khalid was sanctioned reflected negatively on what matters most – patient care and safety.  In fact, the American Medical Association's Code of Ethics lists nine principles, of which only one is applicable to Khalid's performance as a student (and later as a physician), and on which the allegations against Khalid could reasonably be related – that of honesty and integrity in professional interactions specifically related to the communications misunderstanding referred to CAPS in February 2023.   Matters for which he was issued a professional development plan (prior to his leave of absence) and which he successfully completed in March 2025 which CAPS noted that his "reflections demonstrate that you have experienced growth in regarding to your professional identity formation." (see Reference (h))

CAPS referred repeatedly to professionalism and sound decision-making insofar as Khalid failed to communicate with "faculty, staff, and others" about various administrative matters *related solely to his education*.  We note with interest that Khalid's reflections on topics 4 and 6 were directly related to "professionalism and sound decision-making."  In each reflection, Khalid received high marks for his work and personal growth.

Given his successful completion of the Professional Development Plan, and the nature of the infractions (lack of communication on administrative matters – not patient care or safety), and that Khalid was never suspended for "failure to meet the terms of academic warning and/or probation, for new failures to meet/maintain academic, professional or technical requirements, or for any egregious violation of the above-mentioned requirements," a dismissal recommendation is extraordinarily egregious   He was ***never*** placed on ***administrative suspension*** due to "allegations of personal misconduct or observed behavior that threatens the well-being of self or others."  ***A recommendation for dismissal three days prior to graduation is egregious.***

**Conclusion**.  Khalid is an excellent student as is evident from his academic performance and the many positive and outstanding reviews he received from his rotation and other supervisors.  He has an excellent bedside manner.  By all accounts, he was excelling at his studies and will make an excellent physician.  His *administrative* failures related to the administration of his education, reinforced by his mental health issues, is not a reason to dismiss him.  What Khalid needed, and he received from his professionalism development plan – but failed to receive from the GCSOM faculty and staff, was caring leadership and mentoring.

MNB Meridian Law, Ltd.

As of March 2025, Khalid had successfully completed his professionalism development plan. He was a student on track to graduate – but for the last hurdle of the USMLE Step 2 exam. In a moment of panic – again reinforced by a mental health crises, he chose to postpone his exam for 10 days to give him a better chance of passing the exam. The cited reason for his referral and dismissal was that he "***did not notify anyone that he did not sit on 4/19***. *… Per the GCSOM Policy on Satisfactory Academic Progress Khalid must complete the MD curriculum within 6 years including leaves of absence. Because he began the MD curriculum in 2019, Khalid must graduate with the MD Class of 2025.*" (*see* Reference (g)) (emphasis added)

The core of his repeated referrals to CAPS are insignificant when in context and related to patient care and safety (the real concern regarding communication in the medical community). After the successful completion of his professionalism development plan, Khalid had met all of the requirements to be removed from administrative probation. He "passed" and was "clear." A dismissal recommendation is a particularly egregious recommendation on the part of CAPS in context of the global practice of medicine. Khalid must be permitted to receive his diploma. He earned it. He deserves it. And, if his rotation and academic supervisors, professors, and instructors are correct, the medical community will be losing a talented, thoughtful, engaging, and bright doctor.

For the reasons discussed, we respectfully request that Khalid Hossain's status be reinstated. GCSOM must issue his diploma, and be permitted to graduate. Any decision otherwise, were it to be viewed by an outsider observer, likely would not pass a commonsense test or even judicial scrutiny.

We look forward to an opportunity to discuss these matters in person, and will make ourselves available to discuss how he can be issued his diploma.

I can be reached at the addresses and telephone numbers above. Khalid can be reached on his mobile at (610) 883-1537, and by email at Khalid.Hossain2019@gmail.com

Sincerely,

MNB MERIDIAN LAW, LTD.

Christopher Nuneviller
Principal and Managing Member
*Counsel to Khalid Hossain*

MNB Meridian Law, Ltd.

cc:
Khalid Hossain

Reference(s):
a. Student Handbook (2024-2025)
b. Student Bulletin (revised June 2024)
c. Geisinger College of Health Sciences (GCHS) Code of Academic and Professional Integrity (undated)
d. Policy on Graduate Academic and Professional Performance (undated)
e. Dismissal Recommendation (May 8, 2025)
f. Professional Referral – Khalid Hossain ~March 1, 2023 (unsigned and undated)
g. Student Referral for Academic or Professionalism Concerns of April 24, 2025
h. Ms. Ghormoz letter of March [ ], 2025
i. GCSOM Accessibility Committed accommodations approval, January 3, 2023.
j. Student Referral for Academic or Professionalism Concerns of February 23, 2023, Kahlid Statement
k. Student Referral for Academic or Professionalism Concerns of October 29, 2024

Enclosure(s):
1. Student Policy on Satisfactory Academic Progress for the MD Degree (Financial Aid) (April 2, 2019)
2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3. Clerkship Director Final Consensus – Surgery, Dr. Marcia (attending) dated February 12, 2023
4. USMLE Step 2 CK Score Report of Hossain, Khalid (April 30, 2025)